**In re Lyndol Bynum CARTER, Jr., Relator.**

No. 07–97–0355–CV.

Court of Appeals of Texas, Amarillo.

Dec. 17, 1997.

Law Offices of L.T. "Butch" Bradt, L.T. "Butch Bradt," George N. Harwood, Houston, for appellant.

Before QUINN and REAVIS, JJ., and REYNOLDS, Senior Justice.*

QUINN, Justice.

Lyndol Bynum Carter, Jr. (Mr. Carter) petitions the court for mandamus relief against the Honorable David Gleason, Judge, 47th Judicial District Court of Randall County, Texas. Five grounds are asserted supposedly entitling Mr. Carter to the relief sought. The first involves Judge Gleason's refusal to quash a subpoena, the second, his admission into evidence of an original exhibit, the third, his striking of a portion of Mr. Carter's pleadings, the fourth, his levy of sanctions against Mr. Carter, and fifth, his continuing trial until June 1998. After considering the record before us, we deny the petition for writ of mandamus.

## Background

This proceeding arises from a suit for divorce between Mr. Carter and Connie Leigh Carter (Mrs. Carter). Furthermore, the divorce has been pending for over three years and, as indicated by the record, has hardly been amicable. Indeed, as per one who has observed the proceedings, the two litigants "seem [unable] to agree on the time of day." Because of this, the trial court has been thrust into the position of micromanaging the continuing relationship between the parties and their offspring. And, the particular controversy before us may be seen as but another step in the combative saga.

Mrs. Carter had moved the trial court for sanctions against her husband. They were warranted, in her estimation, because he had abused the "discovery and judicial process" by "deliberate[ly]" tendering to her a bounty of irrelevant information in response to a discovery request. This allegedly caused her legal counsel to expend numerous hours in perusing what was considered "junk." So, Mrs. Carter moved the court for sanctions equal to the amount of attorney's fees she needlessly incurred. However, that was not the only relief sought. She also moved to strike various of her husband's pleadings. The portions sought to be struck encompassed causes of action allegedly pled by him at the eleventh hour. Furthermore, they were so pled, according to her, to "deliberately ... force delay of the trial ... to further increase [her] litigation expenses, and to interfere with her ability to prepare a proper defense to the new allegations." So too were they frivolous, in her view. The court convened a hearing on August 8, 1997, to address the aforementioned allegations. Both Mr. and Mrs. Carter appeared at the proceeding with their respective counsel. Whether Mr. Carter appeared voluntarily is unknown given that his wife had served him with a subpoena *duces tecum.* Via the subpoena, Mr. Carter was not only directed to appear at the hearing but also to bring with him thirteen items. Instead of bringing the items, he filed a motion to quash on the day of the hearing. Entertaining that motion was the first order of business. And, after the parties made their arguments thereto, the court refused to quash the subpoena.

Next, the court heard evidence and argument concerning the motion for sanctions and to strike. Thereafter, monetary sanctions were entered against Mr. Carter in the amount of $4000, a sum approximating half of that desired by Mrs. Carter. The court also decided to grant part of the motion to strike; that is, "only that portion [of the pleading] alleging the violation of a California criminal statute with civil penalties" was struck.[1] And, the court did so because no such cause of action allegedly existed in Texas.

Once all motions were addressed, the court attempted to select a trial date. Input was obtained from the parties. And, it was tentatively agreed that all remaining pretrial matters would be addressed during the week of November 3, 1997, with trial commencing the following week. One other topic was broached before the gathering disbanded, and it involved possession of various original

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

1. The pertinent statutes could be found at §§ 630 *et seq.* of the California Penal Code and apparently declared it unlawful to wiretap or eavesdrop on another's electronic or confidential communications.

video/audio tapes admitted into evidence. The court had asked the parties whether they "want[ed] them released back to the party who offered them" or whether they "want[ed] them to stay in evidence until such time as trial comes around[.]" Mr. Carter's attorney represented to the court that he may "file a motion to withdraw them if [opposing] Counsel" would not agree to their release from the record. In response, Mrs. Carter's attorney indicated that she would rather have the court decide the matter. Given this situation, the trial judge suggested that the parties "work out that technicality" and concluded that "for the present time, they will remain" on file with the district clerk.

### Standard of Review

▮▮▮ It has long been the rule that mandamus is an extraordinary remedy. *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994). Simply put, it does not issue as a matter of course or simply because one desires same. Rather, its issuance is contingent upon the satisfaction of at least two specific criteria. That is, the circumstances must illustrate that the trial court clearly abused its discretion in acting or failing to act in a particular manner and that the applicant has no adequate remedy at law. *Id.; Street v. Second Court of Appeals,* 715 S.W.2d 638, 639 (Tex.1986). Moreover, the heavy burden of satisfying these prongs lies with the party seeking relief. *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d at 305. For instance, as to the first prong (clear abuse of discretion), the relator must prove that the court had but only one course of conduct to undertake given the circumstances, that same was demanded of the court, and that the court refused to pursue it. *See O'Connor v. First Court of Appeals,* 837 S.W.2d 94, 97 (Tex.1992) (holding that the existence of a legal duty to perform a nondiscretionary act and a demand for performance coupled with refusal by the court are three requisites to mandamus); *Doctors Hosp. Fa-*

cilities v. Fifth Court of Appeals, 750 S.W.2d 177, 178 (Tex.1988) (holding the same).

▮▮▮ As to the second prong, his burden is to prove that unless the writ issues he is in danger of losing substantial rights. *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d at 306; *see Montalvo v. Fourth Court of Appeals,* 917 S.W.2d 1, 2 (Tex.1995) (refusing to award mandamus because the applicants failed to illustrate "harm," *i.e.,* that the discovery sanction imposed on them "deprived them of any ability to develop" pertinent evidence). Furthermore, that an appeal would be more expensive or involve more delay than mandamus is not tantamount to the loss of a substantial right; thus, more must be shown than that. *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d at 306. Again, the loss of a substantial right, such as the inability to conduct discovery, *Montalvo v. Fourth Court of Appeals,* 917 S.W.2d at 2, or the denial of a reasonable opportunity to develop the merits of the case, *Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d 105, 106 (Tex.App.—Dallas 1992, orig. proceeding), for example, is a prerequisite to relief.

### Application of Standard to Case at Bar

#### 1. Failure to Quash Subpoena

▮▮▮ Of the five bases for mandamus proffered by Mr. Carter, the first concerns the court's refusal to quash the subpoena *duces tecum* served upon him. The court was allegedly required to quash the subpoena because his wife failed to tender a witness fee or reimburse him for mileage as per § 22.001(a) of the Texas Civil Practice and Remedies Code.[2] The fee purportedly required by the provision was *ten dollars.* TEX. CIV. PRAC. & REM.CODE ANN. § 22.001(a) (Vernon 1997). In effect, Mr. Carter seeks the extraordinary writ of mandamus merely because he did not receive ten dollars. Yet, how his failure to obtain the *de minimus* sum harmed him is unexplained. Assuming *arguendo* that he was indeed entitled to it, he nevertheless says nothing about how the denial of ten dollars impedes his ability to

2. According to paragraph (a) of § 22.001 of the Texas Civil Practice and Remedies Code, the witness fee "includes the entitlement for travel and the witness is not entitled to any reimburse-

ment for mileage traveled." Thus, it immediately appears questionable whether Mr. Carter was entitled to demand mileage.

conduct discovery, develop his case, or protect any other substantial right. Given this, he has not carried his burden of establishing the absence of adequate legal remedy by appeal. *Canadian Helicopters, Ltd. v. Wittig, supra.*

### 2. Admission of Original Exhibits

Next, Mr. Carter suggests that he was entitled to mandamus since the trial court "admitted the originals of Relator's video and audio tapes into evidence during the August 8, 1997, hearing." Yet, the point's wording is somewhat misleading for he does not actually contend that the court erred in receiving original exhibits into evidence. Rather, "Relator [allegedly] needs these tapes to prepare for trial and to examine witnesses during trial." So, his contention is one of being unable to prepare for trial because the tapes are supposedly unavailable.

■ In perusing the record, we find that the question about releasing the tapes was broached by the trial judge. In response to the court's inquiries, Mr. Carter's attorney said that he would file the appropriate motion if the parties could not agree on what to do. And, the trial court left it at that, obviously hoping that they "work out that technicality" on their own. But, nowhere does the record reveal that the trial court refused to release the tapes. Nor does it reveal that Mr. Carter's attorney filed the motion that he said he would or otherwise actually demanded possession of the exhibits. Under these circumstances, mandamus is unavailable because the court has not refused to do that which we are asked to compel it to do. *O'Connor v. First Court of Appeals, supra.*

### 3. Striking Pleadings

■ Next, mandamus is desired because the trial court purportedly abused its discretion by striking "a portion of Relator's operative pleadings." It should be recalled that the court struck the California cause of action since, in its view, it was not cognizable in Texas; that is, Texas law did not recognize such a theory of recovery. Yet, nowhere does Mr. Carter attempt to refute the court's conclusion. Indeed, of the five reasons propounded under this point, none address whether the decision was substantively correct or incorrect. Furthermore, none of the arguments actually proffered, not even the United States Supreme Court case of *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), cited by relator, stand for the proposition that a trial court is obligated to permit a litigant to pursue a non-existent cause of action. Thus, Mr. Carter again failed to prove the element of abused discretion.[3]

### 4. Sanction

■ Next, the relator says he is entitled to mandamus because the trial court abused its discretion in sanctioning him $4000. This ground too must be rejected for the reason that he did not attempt to prove that he lacked adequate legal remedy. The mere levy of sanctions does not warrant mandamus, for such awards are generally reviewable through appeal. *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801, 802 (Tex. 1986) (involving sanctions levied for discovery abuse); *Street v. Second Court of Appeals,* 715 S.W.2d at 639 (involving sanctions for discovery abuse). At the very least, the sanctions levied must have the effect of 1) precluding a decision on the merits, *Wolma v. Gonzalez,* 822 S.W.2d 302, 304 (Tex.App.— San Antonio 1991, orig. proceeding) (involving sanctions for filing a groundless suit), 2) impeding the defense or prosecution of the case, 3) denying substantial rights, or 4) causing some type of immediate irreparable injury to render mandamus appropriate. *Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d at 108 (holding that the Rule 13 sanctions must have the effect of denying the litigant access to the courts to be entitled to mandamus).

■ Here, nothing was said about how the sanction levied would prevent Mr.

---

3. To the extent that Mr. Carter argues that the "order ... Respondent signed ... struck more of Relator's pleadings than what Respondent indicated on the record he was striking," that ground does not entitle him to mandamus relief. Simply put, the record is sans evidence that the trial court was ever called upon to correct the supposed error. So, Mr. Carter did not fulfil his duty to first demand of the trial court that relief requested via mandamus. *Doctors Hosp. Facilities v. Fifth Court of Appeals,* 750 S.W.2d 177, 178 (Tex.1988).

Carter from defending himself or prosecuting his claims. Nor were we informed of how any other substantial right was impeded by the court's act. And, though it was suggested that he lacked the funds to pay the award, we are left to speculate upon whether this means he cannot also pursue the litigation.[4] In sum, Mr. Carter again failed to prove the want of adequate legal alternative.

### 5. Trial Setting

■ Finally, through the last ground, it is argued that mandamus is appropriate to compel the trial court to try the lawsuit. That is, the trial court purportedly abused its discretion when it decided to continue trial until June of 1998. And, the delay, according to Mr. Carter, effectively "deprived [him] of the right to obtain custody of his children, the right to stop the financial hemorraghing [sic] caused by [his wife] and the right to obtain a divorce." But, as alluded to above, the matter was set for pretrial during the week or November 3, 1997, and for trial during the ensuing week. Before either date arrived, however, counsel for Mr. Carter sent the court a letter informing it of a conflict that had arisen.[5] The Judge for the 284th Judicial District Court had allegedly set one of his criminal cases for trial, and the setting was "firm." "There [was] no chance that this case will plead out [sic] and due to the age of the case, [counsel had] been informed that [the parties were] first on the trial docket," represented Mr. Carter's attorney. Furthermore, that trial was expected to last five days. In other words, the relator's counsel would not be able to attend the November 3rd pretrial hearings.

Counsel's letter was considered a request for continuance by the trial court. And, because the court recognized that "criminal dockets have precedence over civil dockets," it granted the motion and vacated both November settings. Mr. Carter was also told by the court that a "new request for trial setting will be required" and that it would be unlikely that the cause could be reached prior to June of 1998.

From the above, one could reasonably conclude that the divorce suit before us would have been tried in November of 1997 but for the conflict raised by Mr. Carter's own attorney. The latter, therefore, could be considered as causing the delay and "financial hemorraghing [sic]" about which his client now complains. More importantly, the trial court did not refuse to try the proceeding; rather it simply postponed the matter due to counsel's inability to appear.

■ And, to the extent that Mr. Carter posits that the court's inability to try the action before June of 1998 constitutes clearly abused discretion or a violation of legal duty, we say that no litigant is entitled to trial at the time he selects. Rather, the trial court has the duty and corresponding power to control its docket and select which cases to try. *State v. James*, 494 S.W.2d 956, 959 (Tex.Civ.App.—Houston [1st Dist.] 1973, orig. proceeding). And, in performing this duty and exercising this power, it cannot ignore those cases which statute accords preferential treatment. *See* TEX. GOV'T CODE ANN. § 23.101 (Vernon Supp.1998) (itemizing the types of disputes or proceedings which must receive preferential treatment).[6] Nor can it ignore those which may be older or

---

4. Indeed, to the extent that the sanction depletes his financial resources and curtails his ability to prosecute his suit, the first order of business would be to inform the trial court of same. That is, "a litigant must contend to the district court that a monetary sanction will preclude his or her access to the court." *Susman Godfrey, L.L.P. v. Marshall*, 832 S.W.2d 105, 108 (Tex.App.—Dallas 1992, orig. proceeding). And, once the allegation is made, the trial court must then be afforded the opportunity to either make the sanction payable at the end of litigation or enter findings, after a prompt hearing, illustrating why the allegation is untrue. *Id.* The record before us does not show that Mr. Carter raised the matter of inability to proceed below. Nor does it reveal that the trial court was afforded the two pronged

opportunity alluded to in *Susman*. Thus, mandamus remains premature. *Id.*

5. Though this letter happened to be omitted from the plethora of documents attached to Relator's petition for writ, Mrs. Carter included it in her response.

6. The categories include temporary injunctions, criminal actions, election contests, certain orders for the protection of the family, and appeals from rulings issued by certain administrative bodies. TEX. GOV'T CODE ANN. § 23.101(a) (Vernon Supp. 1997). General divorce actions like that at bar, however, are not mentioned.

those which may involve more pressing circumstances. Similarly in need of consideration is the demand upon its time caused by the other business before it, both judicial and administrative, and the litigants' preparedness for trial. In effect, many things go into determining which cases to try. Thus, to show that the court abused its discretion by postponing the trial of a particular suit, the complainant would be obligated to show, at the very least, not only that he was ready to proceed but also that the other aforementioned factors (and any others which may be legitimately considered by a trial court in ordering its docket) clearly weighed in his favor. Only then would the refusal to proceed begin to equate a violation of abused discretion.[7] But, here, Mr. Carter does nothing of the sort. He simply focuses on the age of his case without comparing it to any other case or considering any other factor which the court may legitimately weigh. In sum, his efforts fall short of proving a clear abuse of discretion.

Finally, neither party has solicited another setting from the court as per the court's instructions. It may be that Rule 245 of the Texas Rules of Civil Procedure indicates that once a written request for a trial setting has been filed no others need be proffered. Yet, by making a written request per Rule 245, the requesting party is implicitly telling the court that the cause will be ready to be tried on the dates suggested. TEX.R. CIV. P. 245. Thus, it serves as a means of notifying the court that it can place the matter within the stream of cases moving toward trial. And, the court is entitled to rely upon the representation in ordering its docket, and the parties need not again reassure the court of their preparedness. But, the same cannot be said when the court has relied upon such requests only to find that the parties could not appear on the dates selected. Such a course of conduct by the litigants not only conflicts with the purpose of Rule 245 but also disrupts the orderly progression of the court's docket. And, when that occurs, the court is empowered to take measure to reduce the disruption by again demanding notification of the parties' preparedness.

Here, the record indicates that the pending suit had been set for trial at least two times in the last eight months. Yet, in each instance one or the other of the parties asked that the setting be vacated. This constitutes some evidence of the frustration experienced by the court in resolving the matter. So too is it evidence tending to suggest that the court cannot rely upon prior representations regarding the parties' preparedness for trial. Consequently, its decision to have the parties again request a trial setting, once they can accurately represent that they are ready to try the case on the dates proposed by them or selected by the court, is a reasonable and practical alternative to simply pulling dates from a hat and risking frustration.

### *Conclusion*

We find that Mr. Carter failed to carry his burden *vis-a-vis* each of the grounds underlying his request for mandamus relief. Accordingly, we deny his petition for same.

---

**7.** That the court had criminal cases which took precedence was the reason given by it for delaying trial until the summer of 1998. In its estimation, and based upon the representations of the parties that the resolution of pretrial matters would take "as long as a week" and that the trial could take "as long as two or three weeks," there was "absolutely no way ... [it could] accommodate the parties with a commitment of that amount of court time until sometime next summer at the very earliest." Furthermore, it allegedly had to "give precedence to criminal cases, which are arising to the trial level in all three counties served in the 47th Judicial District."