**In re DYNAMIC HEALTH, INC., Community Health Systems, Inc., D.H.I. Hospitals, L.P., and Northeast Medical Center.**

No. 06–00–00077–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 14, 2000.

Decided Nov. 8, 2000.

John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, Phillip R. Livingston, Livingston & Livingston, PC, Houston, Dan Meehan, Turner, Meehan & Porter, LLP, Bonham, for relator.

G. David Smith, Law Office of G. David Smith, Dallas, for real party in interest.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Dynamic Health, Inc., Community Health Systems, Inc., D.H.I. Hospitals, L.P., and Northeast Medical Center (Relators) have petitioned this court to issue a writ of mandamus, ordering the trial court to set aside its orders awarding sanctions in cause number 33240, entitled *John W. Chung v. Dynamic Health, Inc., et al.*, in the Sixth Judicial District Court of Fannin County, Texas.

John W. Chung, M.D. (real party in interest herein and plaintiff below) sued for damages from Relators (defendants below) for breach of contract, conversion, defamation, intentional infliction of emotional distress, and fraudulent inducement, arising out of a "Physician Recruitment Agreement" between Chung and Relator Dynamic Health, Inc., which at the time the agreement was signed, was the owner and operator of Northeast Medical Center (Hospital) in Bonham, Texas. The owner-

ship of the Hospital changed during the events in question resulting in the naming of the other party defendants.

■ Evidence was presented showing the following: Chung was an orthopedic surgeon practicing in Southern California when he was recruited by Dynamic to relocate to Bonham, due to the hospital's need for such medical specialty on its staff. In October 1994, Chung entered into the agreement with Northeast Medical Center, terminated his California practice, and re-located to Bonham. The terms of the agreement included providing for a specific level of income for the first two years of Chung's practice, a loan to Chung to assist him in buying out of an outstanding lease in California, an office rental allowance, an allowance for moving and other expenses incurred in his relocation, a housing allow-ance and reimbursement for actual over-head expenses, and medical liability insur-ance costs. In return Chung was required to engage in the full-time practice of medi-cine at Northeast Medical Center for at least two years. In March 1995, Chung commenced the practice of medicine in Bonham, Texas. Beginning in September 1995, D.H.I. Hospitals, L.P. leased office space to Chung in a building that it owned at 505 Lipscomb in Bonham. In August 1996, Northeast Medical Center was sold to Community Health Systems, Inc., which operated the hospital as Northeast Medical Center, L.P.[1]

A dispute then arose between Chung and the Hospital regarding alleged failure by it to make payments to Chung which were owed under the agreement. North-east Medical Center, in turn, accused Chung of violating certain hospital rules and procedures in his treatment of certain patients. Chung was eventually absolved of any wrongdoing by the peer review committee of the hospital. During the pe-riod of this dispute, two other significant events occurred: 1) Chung filed for bank-ruptcy[2] and 2) the Hospital, represented by Deanya Kueckelhan,[3] filed an action for declaratory judgment in Fannin County,

---

1. Chung contends that the exact nature of the corporate and other form of ownership of Northeast Medical Center cannot be fully de-veloped because information regarding these matters has not been forthcoming from Rela-tors. Relators in turn, in their petition, com-plain that the trial court's action against *all* defendants was not justified because the events in question occurred after the sale of Northeast Medical Center, and Dynamic Health was no longer in an ownership posi-tion and, further, in any case, certain of the named defendants would not be responsible for any alleged spoliation of evidence. We note, however, one counsel represented be-fore the trial court on behalf of all named defendants. At that time, any individually named defendant had the opportunity to raise any individual defense that it might have had, but did not do so. Nowhere in either the discovery hearing of December 6, 1999 or March 9, 2000, do any of the individual defen-dants raise any issue about their individual lack of responsibility for failure to produce court-ordered discovery. As a general rule, a defendant must complain about a defect in parties before a case is called to trial. *Sha-well v. Pend Oreille Oil & Gas Co.*, 823 S.W.2d 336, 338 (Tex.App.—Texarkana 1991, writ de-nied); *Sunbelt Constr. Corp., Inc. v. S & D Mech. Contractors, Inc.*, 668 S.W.2d 415, 418 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). We view the situation presented in this case as analogous to the rule just cited. All defendants (Relators) spoke with one voice to the trial court; they have not attempted, even in their petition to this court, to articu-late any individual defenses.

2. During the course of this litigation, Chung filed for bankruptcy (case number 97–30438–S–11; *In re: John W. Chung*, in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division). We are further advised, in the Reply to the Real Party in Interest's Response to Petition for Writ of Mandamus, p. 4, note 1, and in a subsequent letter from Relators' counsel, that Chung pleaded guilty to two counts of bankruptcy fraud on May 30, 2000, in cause number 4:00–CR–11, *United States v. Chung*, in the United States District Court, Eastern District of Texas, Sherman Division.

3. Kueckelhan was originally a named defen-dant in Chung's lawsuit. The latest pleadings shown in the record presented in connection with Relators' petition do not show that she remains a defendant. Our limited record does not show by what means Kueckelhan was let out of the case.

serving Chung by publication in a newspaper published in Trenton, but not in Bonham. Chung asserted that, at that time, he had counsel representing him willing to accept service on his behalf in the dispute with the Hospital. The Hospital obtained a judgment against Chung's property.

What precipitated this lawsuit was the action taken by Northeast Medical Center on December 26, 1996, in forcibly evicting Chung from the office it had rented to him under the agreement.

During the discovery phase of this litigation, Chung propounded discovery on the defendants, including written interrogatories, requests for production, and requests for admission. The record, filed with Relators' petition, shows that on September 13, 1999, Chung filed his Motion to Compel Discovery Responses, to Deem Requests for Admissions Admitted, and for Awarded Sanctions. Chung also filed a Motion for Partial Summary Judgment on October 12, 1999.

After a hearing conducted on December 6, 1999, the trial court awarded partial summary judgment to Chung, finding that Relators had breached both the Physician Recruitment Agreement and the office lease agreement with Chung and rejected the affirmative defenses of limitations, failure of consideration, and payment asserted by Relators. The trial court also entered an order: (1) overruling Relators' objections to Chung's discovery; (2) ordering Relators to fully and completely respond to certain enumerated requests for production within thirty days; (3) deeming and ordering admitted certain enumerated requests for admission propounded by Chung; and (4) awarding sanctions of $500,000 to Chung, for which Relators were to be jointly and severally liable, conditioned on Relators' full compliance with the enumerated requests for production within thirty days of the date of the hearing.

Chung subsequently moved for additional sanctions on January 7, 2000. This motion requested the trial court to strike Relators' pleadings, render a default judgment against them, and award Chung attorney's fees of $25,000, pursuant to TEX. R.CIV.P. 215.2(b)(5) and 215.2(b)(8). On March 17, 2000, the trial court issued its Order Granting Sanctions finding, *inter alia,* "that said Defendants and their attorney have engaged in a continuous course of discovery abuse by failing to provide material and relevant discovery and that said Defendants have intentionally destroyed evidence material and relevant to this litigation when they knew they should have preserved such evidence." The trial court also found that previous sanctions imposed by the trial court had failed to compel Relators to comply with discovery requests and that Chung's attorney's fees and expenses of $33, 250 were reasonable. The trial court ordered that Relators' pleadings be stricken and ordered a hearing on damages be held at which Relators would not be permitted to object to evidence or to cross-examine witnesses. The trial court also ordered the payment of $33,250 in attorney's fees to Chung.

This court must initially determine whether mandamus is an appropriate remedy in this situation.

 The writ of mandamus will issue only to compel the performance of a ministerial act or duty, or to correct a clear abuse of discretion by the trial court. The trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). In addition to showing the failure to perform a ministerial duty or the clear abuse of discretion by the trial court, the relator must also show that he does not have a clear and adequate remedy at law, such as a normal appeal. The requirement that parties seeking mandamus relief establish the lack of an appellate remedy is a fundamental tenet of mandamus practice. *Id.* at 840.

 When, as is shown to have occurred in this case, a trial court imposes discovery

sanctions having the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering a default judgment—a party's remedy by eventual appeal is inadequate unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment. If such an order of sanctions is not immediately appealable, the party may seek review of an order by petition for writ of mandamus. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 920 (Tex.1991); *In re Zenergy*, 968 S.W.2d 1, 9 (Tex.App.—Corpus Christi 1997, orig. proceeding).

■ In his response to the petition, Chung concedes that mandamus is appropriate to review the so-called "death penalty" sanctions imposed by the trial court. However, he argues that the award of partial summary judgment and the award of monetary sanctions are adequately reviewable on appeal, and are, therefore, not appropriate for mandamus.

Regarding the partial summary judgment, Chung cites *State Farm Fire & Cas. v. Griffin*, 888 S.W.2d 150, 153 (Tex.App.—Houston [1st Dist.] 1994, no pet.), in support of his contention that the partial summary judgment is interlocutory, appealable only when the case is finally disposed of by a final judgment or order. The order clearly grants only *partial* summary judgment, and the hospital defendants acknowledge that the judgment is not final, in that subsequent to the court's order they filed a "Motion to Reconsider *Partial* Summary Judgment." (Emphasis added.) The *State Farm* case cites *Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 159 Tex. 550, 324 S.W.2d 200 (1959), in which the Supreme Court stated

In our opinion a summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court. In the absence of an order of severance, a party against whom such an interlocutory summary judgment has been rendered will have his right of appeal when and not before the same is merged in a final judgment disposing of the whole case.

*Id.* at 200–01 (citations omitted).

The record in the present case does not show, and Relators do not contend, that there was a severance of this part of the case. Thus, under the stated rule, this portion of the trial court's ruling may not be reviewed by mandamus. There is clearly an adequate remedy at law.

■ Chung also argues that the $500,000 monetary sanction levied by the trial court is not reviewable by mandamus. The mere levy of sanctions does not in and of itself warrant mandamus relief, as such awards are generally reviewable by appeal. In order to warrant extraordinary relief, the sanctions award must 1) preclude a decision on the merits;[4] 2) impede the defense or prosecution of the case; 3) deny substantial rights; or 4) cause some type of immediate irreparable injury to render mandamus appropriate. *In re Carter*, 958 S.W.2d 919, 923 (Tex.App.—Amarillo 1997, orig. proceeding). One or more of these factors must be raised before the trial court and an adverse ruling obtained in order to preserve for mandamus review the alleged abuse of discretion by the trial court. *In re Zenergy*, 968 S.W.2d at 11.

Relators in the present case have not alleged in their petition their inability to

4. Monetary sanctions should not ordinarily be used to dispose of litigation. If the imposition of monetary sanctions threatens a party's continuation of litigation, appeal affords an adequate remedy only if payment of the sanctions is deferred until final judgment is rendered and the party has the opportunity to supersede the judgment and perfect his ap-

peal. *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991). The record in the present case indicates that the order imposing sanctions specifically provided that their imposition was conditional, and even if finally assessed, payment would not be required until a final judgment was rendered in the case.

proceed with the litigation, or any of the other factors recognized by the above-cited cases as requisites for mandamus relief. The wording of the sanctions award specifically requires their payment only upon the issuance of a final judgment or order. Because Relators have an adequate remedy by appeal, we deny mandamus relief as a means of review of the monetary sanctions levied by the trial court.

The trial court's sanction from which Relators seek extraordinary relief from this court include the striking of Relators' pleadings and permitting Chung to appear and present evidence of his damages, and not permitting Relators to raise objections, cross-examine Chung's witnesses, or present any evidence of their own.[5]

 The imposition of discovery sanctions serves three legitimate purposes: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar conduct; and 3) to punish violators. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). Whether the imposition of such sanctions is just is measured by two standards: 1) the finding of a direct relationship between the offensive conduct and the sanction imposed; and 2) the sanction, in order to be just, must not be excessive. *TransAmerican Natural Gas,* 811 S.W.2d at 917. In addition to these two requirements, in the case of so-called "death penalty" sanctions, this court has recognized two additional criteria: 3) that the trial court should first impose lesser sanctions to test the effectiveness of these less severe sanctions at securing compliance and 4) that the sanctioned conduct justifies a presumption that the party's claim or defense lacks merit. *Prudential Prop. and Cas. Co. v. Dow Chevrolet–Olds, Inc.,* 10 S.W.3d 97, 103 (Tex.App.—Texarkana 1999, pet. dism'd) (citing *Chrysler Corp.,* 841 S.W.2d at 849–50).

Prior to the imposition of sanctions, the trial court on two occasions made factual determinations as to the conduct of the Hospitals in responding to Chung's discovery. In issuing its first set of sanctions, the trial court found that: 1) the Hospitals "have failed to provide the discovery requested" and 2) that the Hospitals "have withheld discovery that prevents the Plaintiff from effectively evaluating and proving or disproving elements of damages ." In the death penalty sanction order, the trial court found that the Hospitals had failed to provide discovery and that "said Defendants and their attorney have engaged in a continuous course of discovery abuse by failing to provide material and relevant discovery and that said Defendants have intentionally destroyed evidence material and relevant to this litigation when they knew they should have preserved such evidence."

 With respect to resolution of issues of fact, or matters committed to the discretion of the trial court, the reviewing court may not substitute its judgment for that of the trial court. It is a relator's burden to demonstrate that the trial court could have reached only one decision. Even if the appellate court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker,* 827 S.W.2d at 839–40.

On September 13, 1999, Chung moved the trial court to enter an order compelling Relators to comply with discovery requests, including, specifically, the following discovery:

REQUEST FOR PRODUCTION NO. 3:
All documents reflecting any payments made by you, your agents, or employees to Dr. John W. Chung.

. . . .

REQUEST FOR PRODUCTION NO. 4:
All documents reflecting an inventory of items in Dr. John W. Chung's office the subject of the Lease Agreement at-

---

**5.** Compare this to the procedure utilized to prove damages in a default judgment proceeding. TEX.R.CIV.P. 243; *Paramount Pipe &* *Supply Co. v. Muhr,* 749 S.W.2d 491, 496 (Tex.1988).

tached to the Plaintiff's Original Petition as Exhibit 2 on the date of his eviction therefrom.

. . . .

*REQUEST FOR PRODUCTION NO. 5:* All documents reflecting disposition by you of any property owned or leased by Dr. John W. Chung.

. . . .

*REQUEST FOR PRODUCTION NO. 6:* All documents regarding any claims or complaints of improper medical practice by Dr. John W. Chung.

. . . .

*REQUEST FOR PRODUCTION NO. 7:* All documents reflecting any act of breach of the Physician's Recruitment Agreement attached to the Plaintiff's Original Petition as Exhibit 1.

. . . .

*REQUEST FOR PRODUCTION NO. 8:* All documents reflecting any act of breach of the Lease Agreement attached to the Plaintiff's Original Petition as Exhibit 2.

. . . .

*REQUEST FOR PRODUCTION NO. 15:* All financial statements reflecting the operation of Northeast Medical Center in Bonham, Texas for the years 1994, 1995, 1996 and 1997.

. . . .

*REQUEST FOR PRODUCTION NO. 16:* Your financial statements for 1994, 1995, 1996 and 1997.

. . . .

*REQUEST FOR PRODUCTION NO. 17:* Your income tax returns for the years 1994, 1995, 1996, 1997, and 1998.

. . . .

*REQUEST FOR PRODUCTION NO. 19:* Any documents in your possession reflecting any attempts to take any form of disciplinary action against Dr. John W. Chung at Northeast Medical Center in Bonham, Texas.

. . . .

*REQUEST FOR ADMISSION NO. 5:* M.J. McCoy was authorized by you to evict Dr. John W. Chung from 505 Lipscomb, Bonham, Texas in December, 1996.

. . . .

*REQUEST FOR ADMISSION NO. 6:* Deanya Kueckelhan was authorized by you to file a declaratory judgment action against Dr. John W. Chung in Cause No. 32277 in the 64th Judicial District Court in Bonham, Texas.

. . . .

*REQUEST FOR ADMISSION NO. 7:* Deanya Kueckelhan was authorized by you or persons acting on your behalf to draft and send the letter written by her addressed to Mr. E.C. Green on October 25, 1996 (supplied as Exhibit A to the Plaintiff's Responses to DHI Hospital, L.P.'s Request for Production).

. . . .

*REQUEST FOR ADMISSION NO. 8:* All information regarding the allegation in Deanya Kueckelhan's letter of October 25, 1996 (identified in the preceding request for admission) was supplied to her by you or persons acting on your behalf.

. . . .

*REQUEST FOR ADMISSION NO. 10:* The patient treatment on October 25, 1996 and October 14, 1996 referred to in Deanya Kueckelhan's letter of October 25, 1996 was performed by Dr. John W. Chung in accordance with Northeast Medical Center policies and procedures.

. . . .

*REQUEST FOR ADMISSION NO. 17:* Dr. John W. Chung was not paid any compensation pursuant to the Physician's Recruitment Agreement between Northeast Medical Center and Dr. John W. Chung during the months of September, October, November and December, 1996.

On December 8, 1999, after a hearing, the trial court, *inter alia*, overruled all objections by Relators to the above-quoted

discovery, ordered Relators to fully and completely respond to Chung's requests for production, and deemed admitted the above-quoted requests for admissions. In addition, the trial court imposed on Relators conditional sanctions of $500,000 to be withdrawn if Relators fully complied with the requests for production within thirty days from December 6, 1999.

In January 2000, Chung filed a motion for additional sanctions against Relators. This motion alleged that on October 4, 1999, the motion to compel was set for a hearing, at which Relators' counsel failed to appear. Also, Chung alleged that "[d]espite phone calls from the Plaintiff's counsel and the impending sanctions, the Hospital Defendants have not provided anything." The motion alleged that Relators' failure to produce the requested items prejudiced Chung's ability to prosecute his case. In a brief in support of Chung's motion, Chung charged Relators with spoliation of evidence and the complete failure to provide discovery.

The deposition testimonies of various employees, officers, and former officers of Northeast Medical Center, as well as Chung and his former employees, indicate that one or more of Relators' employees evicted Chung from his office, changed the locks, and locked all of Chung's office equipment and personal items inside the office. The depositions show that Relators' employees were directed to and did prepare written listings or inventories of the contents of the office and gave them to their supervisors. One former hospital administrator testified that he attempted to take a videotaped inventory, but the batteries on the video camera gave out before completion. The testimony indicated that several of the hospital departments received furniture and medical equipment, such as x-ray viewing boxes and examination tables, from Chung's office. One individual testified that he observed small yellow stick-up notes on pieces of the furniture, indicating the department to which it was to be delivered.

Notwithstanding all of this, Relators were not able to provide any documentation with regard to the whereabouts and disposition of Chung's property. The deposition testimony also demonstrates that Relators should reasonably have anticipated litigation (their own employees thought Chung would sue because of the eviction; Relators themselves initiated the declaratory judgment action; and Chung's bankruptcy was pending at the time of the eviction).

After a hearing held March 9, 2000, the trial court on March 17, 2000, made the following findings and orders: (1) that Relators had failed to comply with its previously issued discovery orders; (2) that Relators and their lawyers had engaged in a continuing course of discovery abuse by failing to provide material and relevant discovery and by engaging in spoliation of evidence; (3) that the trial court's previous orders and sanctions had not produced any results; (4) that Chung had incurred and was entitled to recover reasonable attorney's fees of $33,225; (5) that Relators' pleadings be stricken; and (6) that a hearing be held to determine Chung's damages, at which Relators would be permitted no cross-examination and no witnesses on their behalf.

All of the discovery requests related to the whereabouts of Chung's office property, as well as any lists and inventories related to same, were met with complete rejection. These requests and the responses were the main focus of the extraordinary relief requested by Relators. However, as pointed out by Chung, these were only part of the information requested and not provided by Relators. Relators also failed to respond to proper discovery requests concerning any payments made by them to Chung, concerning complaints of alleged improper medical practice by Chung, concerning alleged breach of contract by Chung, concerning financial statements of Northeast Medical Center, and concerning any disciplinary actions taken against Chung. The trial court found no

proper basis for objections to these requests raised by Relators, and Relators raise no such objections in their petition to this court.

The Rules of Civil Procedure authorize a trial court, after notice and hearing, upon a finding that a party to a lawsuit failed to comply with proper discovery requests or to obey an order to provide or permit discovery, to issue "an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party...." Tex.R.Civ.P. 215 .2(b)(5).

▆ The trial court issued such an order in this case, in effect, rendering a default judgment against Relators and permitting Chung to prove his damages without opposition. The imposition of these types of sanctions, termed "the most devastating a trial court can assess," *TransAmerican Natural Gas,* 811 S.W.2d at 917–18, are limited by 1) the finding of a direct relationship between the offensive conduct and the sanction imposed and 2) the sanctions must not be excessive, as well as consideration of constitutional due process. *Id.* at 917. The Supreme Court in *TransAmerican* points out that the striking of pleadings or the rendition of a default judgment for discovery abuse adjudicates the party's claims without regard to their merits, but based on their conduct of discovery. *Id.* at 918. Constitutionally, this is not permitted unless the party's discovery abuse justifies the presumption that its claims or defenses lack merit. "Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.* at 918.

▆ We also have a finding by the trial court of destruction of evidence—spoliation—by Relators. Death penalty sanc-

tions are authorized in the most egregious case. *Trevino v. Ortega,* 969 S.W.2d 950, 953 (Tex.1998). In Justice Baker's concurring opinion in *Trevino,* he writes that whether such action is sanctionable and the appropriate sanction to be imposed requires a determination 1) of whether there was a duty to preserve evidence; 2) of whether the alleged spoliator either negligently or deliberately spoliated evidence; and 3) of whether the spoliation prejudiced the nonspoliator's duty to present its case or defense. *Id.* at 954–55 (Baker, J., concurring). If the required elements of spoliation are found, "courts can dismiss an action or render a default judgment when the spoliator's conduct was egregious, the prejudice to the nonspoliating party was great, and imposing a lesser sanction would be ineffective to cure the prejudice." *Id.* at 959 (Baker, J., concurring). In addition, when a party improperly destroys evidence, trial courts may submit a spoliation presumption instruction to the jury.

▆ In the present case, we find all of the elements for the imposition of death penalty sanctions to have been met. Deposition testimony indicates that management of Northeast Medical Center had disposed of Chung's property and had written and possibly videotaped records of same. Yet, they would not produce them, despite the imposition of significant monetary sanctions. These records were absolutely essential to Chung's claims. In addition, Relators have offered no alternative explanation for the absence of these records. A large medical facility would normally have records of the origin, age, and description of the personal property contained within its facility, if only for insurance and tax purposes. Further, Relators offer no excuse or reason why the other information requested, such as its financial records, was not produced in response to a direct order of the court. These records were essential to Chung's case, and their absence certainly prejudiced the pursuit of his legal action against Relators. The trial

court imposed lesser sanctions to no avail; the record shows that counsel for Chung tried on an informal basis to get the attorney for the Relators to produce the information requested, also to no avail.

■■■■ The proper objective of Rules of Civil Procedure is to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants under established principles of substantive law. TEX.R.CIV.P. 1. The aim and purpose of the discovery process is the administration of justice by allowing the parties to obtain the fullest knowledge of the issues and facts prior to trial.

> In other words, the ultimate purpose of discovery is to seek the truth *so that disputes may be decided by what the facts reveal, not by what facts are concealed.*
>
> . . . .
>
> Sanctions are available to trial courts to assure compliance with the discovery process, to deter those who might be tempted to abuse discovery in the absence of a deterrent, and to punish parties that violate the rules.

*See* 3 McDONALD TEXAS CIVIL PRACTICE § 12:2 (1992) (Emphasis added.).

■■ If one party to a lawsuit flagrantly disregards the rules of discovery, prohibiting a determination of the controversy by what the facts reveal and not by what is concealed, the flagrantly offending party must eventually forfeit his right to a possible determination in his favor. Under the circumstances shown, both Chung and the trial court were entitled to the presumption that Relators' defenses lacked merit.

In summary, we hold that:

1) mandamus will not lie to review the trial court's granting of partial summary judgment in favor of Chung; there is an adequate remedy by appeal;

2) the trial court's award of monetary sanctions is, in this case, not reviewable by mandamus; there is an adequate remedy by appeal; and

3) under the authority cited above, and based on our review of the record, the trial court was justified in imposing death penalty sanctions against Relators.

The petition for writ of mandamus is denied.