**WAL–MART STORES, INC., Appellant,**

v.

**Monroe JOHNSON and Brandy Johnson, Appellees.**

**No. 09–00–067 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 1, 2001.

Decided April 5, 2001.

Kevin D. Jewell and Steven J. Knight, Magenheim, Bateman & Helfand, Houston, for appellant.

Joe J. Fisher, II and Mark Sparks, Provost & Umphrey, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

**OPINION**

WALKER, Chief Justice.

Monroe Johnson and his wife, Brandy Johnson, sued Wal–Mart Stores, Inc., for personal injuries sustained by Monroe Johnson while shopping at Wal–Mart. The issues raised in the appellant's brief concern the spoliation instruction included in the jury charge.[1] The finding of Wal–Mart's negligence and the amount of damages assessed by the jury are not challenged on appeal.

■ In an opinion declining the adoption of an independent tort for spoliation of evidence, the Texas Supreme Court recognized that when spoliation occurs, there must be adequate measures within the context of the lawsuit in which it is relevant to ensure that the destruction of evidence does not improperly impair a litigant's rights. *Trevino v. Ortega*, 969

---

1. Wal–Mart's complaint concerns the decision to provide any spoliation instruction, not the wording of that instruction, which stated:

    You are instructed that, when a party has possession of a piece of evidence at a time he knows or should have known it will be evidence in a controversy, and thereafter he disposes of it, makes it unavailable, or fails to produce it, there is a presumption in law that the piece of evidence, had it been pro-

duced, would have been unfavorable to the party who did not produce it. If you find by a preponderance of the evidence that Wal–Mart had possession of the reindeer at a time it knew or should have known they would be evidence in this controversy, then there is a presumption that the reindeer, if produced, would be unfavorable to Wal–Mart.

S.W.2d 950, 953 (Tex.1998). As with any discovery abuse or evidentiary issue, the trial court's broad discretion in dealing with spoliation, ranging from a jury instruction on the spoliation presumption to death penalty sanctions, is reviewed on a case-by-case basis. *Id.* Several Courts of Appeals have adopted the position presented by Justice Baker in his concurrence to *Trevino v. Ortega*, holding that a party has a duty to exercise reasonable care to preserve relevant information if it either actually or reasonably should anticipate litigation. *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 667 (Tex.App.—Houston [1st Dist.] 1998, no pet.); *Whiteside v. Watson*, 12 S.W.3d 614, 622 (Tex.App.—Eastland 2000, vacated for settlement); *see also Clements v. Conard*, 21 S.W.3d 514, 523 (Tex.App.—Amarillo 2000, pet. denied); *In re Dynamic Health, Inc.*, 32 S.W.3d 876, 885 (Tex.App.—Texarkana 2000, mand. filed).

A Wal–Mart employee arranging merchandise on a high shelf pushed several reindeer[2] Christmas decorations onto Monroe Johnson, who was standing on the other side of the aisle. The primary controversy developed in the course of the trial was whether the reindeer were substantial enough to have caused Johnson's injuries. According to Wal–Mart's store manager, Ron Wheeler, the reindeer retailed from $6.95 to $12.95, were made of papier mâché, were twelve to fifteen inches high, hollow, and weighed from five to eight ounces. The stocker had no idea how much the reindeer weighed, but he agreed that they were made of papier mâché. In contrast, Johnson and his wife both testified that the reindeer were made of wood, not papier mâché. According to Johnson, the decorations weighed about ten pounds each. The falling reindeer were heavy enough to gash Johnson's arm. Wal–Mart failed to produce the reindeer in response to discovery. Wheeler did not profess to possession of personal knowledge of the fate of the reindeer, other than that they were either thrown away or sold.

Wheeler described the procedure followed by Wal–Mart when there is an accident involving a customer. The manager with firsthand knowledge of the incident fills in the report, then calls it in to the claims agent, who calls back and talks to the assistant who filed the report. Wal–Mart also refers its customer incident reports to claims management. Wheeler had no personal knowledge of how claims management handles matters.

The manager on duty at the time of the accident, Phyllis McLane, prepared an incident report a week after the accident. She incorrectly recorded Johnson's age on the form. Her report noted that Johnson suffered a cut to his right arm. Under the heading "What did alleged injured person say happened," the report stated, "Wal–Mart associate working on opposite side knocked paper mache reindeer and columns onto his head and left arm." Attached to the form is the stocker's statement, dated at the time of the accident but actually taken later that day. It states, "I was moving wall products to next riser, some fell back and knocked some reindeer off on customer." McLane took down Johnson's statement on a yellow legal pad, too, but that statement was not produced with the report. The notes McLane took the day of the accident were thrown away after the report was filled out. McLane used an instant camera to photograph the scene, but the quality of the photograph is too poor to reveal the composition of the reindeer. Wheeler admitted that the scene was altered before the photograph was taken. McLane also took two photographs of the cut on Johnson's arm, but those photographs were not produced by Wal–Mart. Wheeler admitted that it was unusual to take a picture of the injured arm. Wheeler admitted that he had no idea personally what Johnson said. McLane did not testify.

2. The record is unclear on the number of reindeer that dropped onto Mr. Johnson. However, there were fewer than eight reindeer.

Wheeler was not present in the store the day of the accident. A week later Wheeler spoke with John Almaguer about the accident, but Almaguer could not recall whether they talked about having to go to court. Wheeler testified he had no idea that a lawsuit might be filed when the reindeer were thrown away or sold.

Johnson filed suit about six months after the accident. One of Johnson's interrogatories asked if Wal–Mart had in its possession any notes made during interviews of witnesses or employees. Wal–Mart objected on the grounds that the interrogatory sought information prepared in anticipation of litigation. The only notes were made on the day the accident occurred.

Johnson argues he was entitled to a spoliation instruction because Wal–Mart anticipated litigation on the day of the incident and failed to provide a reasonable explanation for its failure to preserve the evidence. The manager on duty noted that the customer had suffered an objective physical injury. The evidence-gathering actions taken by Wal–Mart employees, such as taking statements and photographs and submitting reports to claims management, indicate an anticipation of litigation. For other discovery purposes, Wal–Mart took the position that it anticipated litigation on the day of the accident. Given that Wal–Mart is a retail establishment, the store manager assumed the reindeer were sold, but Wal–Mart provided no inventory or other documentation to support its supposition. The person with personal knowledge of what happened to the reindeer and the other evidence did not provide an explanation for not preserving a reindeer because she did not testify.

■ Wal–Mart contends the trial court erred in instructing the jury on spoliation because it provided testimony regarding the reindeer's physical attributes and Johnson failed to establish that Wal–Mart intentionally destroyed the reindeer for the purpose of concealing evidence. Wal–Mart argues a presumption arises from the non-production of evidence under only two circumstances: the deliberate spoliation of relevant evidence and the failure of a party to produce relevant evidence or offer testimony to explain its non-production. *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470–71 (Tex.App.—San Antonio 1998, pet. denied); *accord, Anderson v. Taylor Pub. Co.*, 13 S.W.3d 56, 61 (Tex.App.—Dallas 2000, pet. denied). Wheeler's explanation was not based on personal knowledge, however. Wal–Mart is a retailer and the reindeer were merchandise; so one could presume, as Wheeler did, that the reindeer may have been sold in the ordinary course of business. It is, however, more difficult to assume that the ordinary course of business includes "throwing" potential evidence away? What Wheeler did not explain, and could not explain because he was not there, is why Wal–Mart did not set aside a reindeer along with the other evidence it gathered. Although Wal–Mart explained the reindeer's disappearance, the trial court was not compelled to accept the explanation as reasonable, especially in view of the cavalier disposition of evidence of critical importance to this case.

Wal–Mart argues Johnson is not entitled to a spoliation instruction because Wal–Mart employees supplied testimony regarding the weight of the reindeer. In *Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied), the trial court did not abuse its discretion by refusing to instruct the jury on spoliation because the defendant produced the same information contained in the missing fetal monitor strip through hospital charts and nurse's notes prepared *before* the appellees knew of the infant's severe problems. In *Watson v. Brazos Elec. Power Co-op., Inc.*, 918 S.W.2d 639, 642–44 (Tex. App.—Waco 1996, writ denied), the trial court abused its discretion by refusing to include a spoliation instruction in the jury charge, where the defendant negligently destroyed a key piece of evidence, the condition of which was in controversy. There is nothing inherently reliable about

the testimony offered by Wal–Mart as a substitute for the reindeer. The incident report was prepared in anticipation of litigation and Wheeler's testimony is both interested and partially based upon hearsay. Wal–Mart reduced the lawsuit to a swearing match by gathering evidence and then letting it disappear. Under these circumstances, we cannot say that the trial court's decision to include a spoliation instruction in the jury charge amounted to an abuse of its discretion. Issue one is overruled. There being no error in the jury charge, we need not address harm. Issue two is overruled. The judgment is affirmed.

AFFIRMED.

GAULTNEY, Justice, dissenting.

Respectfully, I dissent. If spoliation occurred, the offense is serious. Spoliation constitutes obstruction of justice. However, there must be evidence that a breach of a duty to preserve evidence occurred before the trial court is vested with discretion on how to punish the bad conduct. *See Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex.App.—Houston [1st Dist.] 1998, no pet.). The trial court serves as factfinder when spoliation is alleged. The trial court must determine whether the charged party is in fact a spoliator. Here, the trial court's conclusion is recorded as follows:

> The Court: [Y]our proposed instruction says: Wal–Mart lost, sold or—
>
> [Plaintiff's counsel]: Discarded.
>
> The Court: —discarded the reindeer, none of which I can—I don't think there's any evidence to support that any specific thing happened to it—well, the best evidence is that it was sold or that they were sold.
>
> [Plaintiff's counsel]: Right.

The record supports the trial court's conclusion, agreed to by plaintiff's counsel, that the best evidence is that the reindeer were sold.

The store sold its merchandise. The circumstances surrounding the accident did not put the store on notice that a dispute would develop later over whether the fallen reindeer were made of wood or paper mâché. Plaintiff suffered a cut on his left arm which a store employee cleaned and covered with a band-aid. Plaintiff admits he told the store employees he was not injured. Was the store then under a duty to remove its merchandise from the shelf and safe-keep the reindeer for a later lawsuit? What is wrong with a store selling its merchandise under these circumstances? No evidence was presented to prove that a breach of a duty to preserve this specific evidence occurred. Because I do not believe selling merchandise constitutes an obstruction of justice, I would hold that the trial court erred in giving the spoliation instruction and would reverse and remand this case for a new trial.